**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LAWMAN ARMOR CORPORATION, | : | |
| | : | |
| Plaintiff, | : | Case No.  2:02-CV-04595-RK |
| | : | |
| v. | : | Judge Robert Kelly |
| | : | |
| WINNER INTERNATIONAL, LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

# TABLE OF CONTENTS

I.    LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    Design Patent Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   THE ACCUSED WINNER PRODUCTS DO
     NOT INFRINGE THE '621 DESIGN PATENT . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    Construction of the Patented Design . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.    The Accused Winner Products . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    C.    Winner's Double Hooks Products Do Not Infringe
       Under Either Test for Design Patent Infringement . . . . . . . . . . . . . . . . . . . 10

       1.    Ordinary Observer Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       2.    Points of Novelty Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    D.    Modifying the Angle of Attachment for the Rim-Engaging
       Member of Winner's Product Demonstrates How Different
       Its Shape Is from the Patented Design . . . . . . . . . . . . . . . . . . . . . . . . . . 16

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

**Cases**

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Chore-Time Equip., Inc. v. Cumberland Corp.,*
713 F.2d 774 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Contessa Food Products, Inc. v. Conagra, Inc.,* 282 F.3d 1370 (Fed. Cir. 2002) . . . . . . . . . . 3, 10

*Door-Master Corp. v. Yorktown, Inc.,*
256 F.3d 1308 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Elmer v. ICC Fabricating, Inc.,*
67 F.3d 1571 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Gorham Co. v. White,*
81 U.S. (14 Wall.) 511 (1871) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Litton Systems, Inc. v. Whirlpool Corp.,*
728 F.2d 1428 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 16

*Markman v. Westview Instruments, Inc.,*
52 F.3d 967 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996) . . . . . . . . . . . . . . . . . . . . . . . 2

*OddzOn Prods., Inc. v. Just Toys, Inc.,*
122 F.3d 1396 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-5, 10

*Stutz Motor Car of America, Inc. v. Reebok Int'l, Ltd.,*
909 F. Supp. 1353 (C.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.,*
157 F.3d 1311 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Winner Int'l Corp. v. Wolo Mfg. Corp.,*
905 F.2d 375 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14

**Statutes**

35 U.S.C. § 102(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

35 U.S.C. § 102(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

35 U.S.C. § 104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Rules**

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

Defendant, Winner International, Inc.[1] ("Winner"), submits this memorandum in support of its motion for summary judgment of non-infringement. Plaintiff, Lawman Armor Corporation ("Lawman"), has alleged that certain automotive anti-theft products sold by Winner infringe U.S. Patent No. Des. 357,621 ("the '621 design patent"),[2] which allegedly is licensed to Lawman on an exclusive basis by the patent's purported owner, Robert Vito. As will be demonstrated conclusively below, Winner's products do not infringe the '621 design patent *as a matter of law,* so that Winner is entitled to summary judgment of non-infringement.

In addition to this Memorandum, Winner has submitted declarations by Gary M. Clifford, Philip J. Moy Jr., and Kevin Winner to provide evidentiary support for its motion for summary judgment.

## I.    LEGAL STANDARDS

### A.    Summary Judgment Standard

Disposition of an action by summary judgment is proper where there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Summary judgment is appropriate in patent infringement cases. *Chore-Time Equip., Inc. v. Cumberland Corp.,* 713 F.2d 774, 778-79 (Fed. Cir. 1983) ("Where no issue of material fact is present, . . . courts should not hesitate to avoid an unnecessary trial by proceeding under Fed. R.

---

[1] Since this action was filed, the originally named defendant, Winner International, LLC, was reorganized as Winner International, Inc., a Florida corporation.

[2] A copy of the '621 design patent was attached as Exhibit A to the Complaint. An additional copy is attached as Exhibit A to this Memorandum.

Civ. P. 56 without regard to the particular type of suit involved."); *see also Stutz Motor Car of America, Inc. v. Reebok Int'l, Ltd.,* 909 F. Supp. 1353, 1358 (C.D. Cal. 1995) (noting that recent Federal Circuit decisions have "repeatedly emphasized" the propriety of summary judgment in patent cases).

The burden imposed on the party seeking summary judgment depends on whether the moving party would have the burden of proof at trial on the issue presented. In this instance, Lawman, as plaintiff, carries the burden of proving that the accused Winner anti-theft products infringe the '621 design patent. Accordingly, Winner can discharge its burden on summary judgment by showing merely a lack of some evidence needed to support Lawman's infringement count, *i.e.,* "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

In the context of summary judgment of non-infringement of a design patent, Winner's burden would be met by showing that Lawman cannot prove infringement under *either* the "ordinary observer" test or the "points of novelty" test. As will be shown below, Winner is entitled to summary judgment of non-infringement under *both* tests.

### B.    Design Patent Infringement

Determining whether a design patent is infringed is a two-step analysis.

> Determining whether a design patent has been infringed requires, first, as with utility patents, that the claim be properly construed to determine its meaning and scope. Second, the claim as properly construed must be compared to the accused design to determine whether there has been infringement.

*Elmer v. ICC Fabricating, Inc.,* 67 F.3d 1571, 1577 (Fed. Cir. 1995) (citing *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996)); *see also Door-Master Corp. v. Yorktown, Inc.,* 256 F.3d 1308, 1312 (Fed. Cir. 2001).

An important principle that guides claim construction for a design patent is that "[a] design patent only protects the novel, ornamental features of the patented design. Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *OddzOn Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1405 (Fed. Cir. 1997). Claim construction is an issue of law that must be determined by the court. *Markman,* 52 F.3d at 979.

The step of comparing the claimed design to the accused article is itself a two-part test. The first part is the "ordinary observer" test enunciated by the Supreme Court in *Gorham Co. v. White,* 81 U.S. (14 Wall.) 511 (1871):

> [I]f, in the eye of the ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Id.* at 528.

This comparison must take into consideration the entirety of the design shown in the patent's drawings. "[T]he 'ordinary observer' analysis is not limited to the ornamental features of a subset of the drawings, but instead must encompass the claimed ornamental features of all figures of a design patent." *Contessa Food Prods., Inc. v. Conagra, Inc.,* 282 F.3d 1370, 1379 (Fed. Cir. 2002) (reversing summary judgment of infringement because the district court failed to analyze the accused product from the perspective of one of the figures of the design patent).

The second part of the infringement analysis is the "point of novelty" test, as articulated by the Federal Circuit in *Litton Systems, Inc. v. Whirlpool Corp.,* 728 F.2d 1428 (Fed. Cir. 1984):

> For a design patent to be infringed, however, no matter how similar two items look, "the accused device must appropriate the novelty in the patented device which distinguishes it from the prior

art." That is, even though the court compares two items through the eyes of the ordinary observer, it must nevertheless, to find infringement, attribute their similarity to the novelty which distinguishes the patented device from the prior art.

*Id.* at 1444. The point of novelty test is "distinct" from and imposes a requirement "in addition to" that of the ordinary observer test. *Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.,* 157 F.3d 1311, 1323 (Fed. Cir. 1998). The Federal Circuit has stated categorically that failing to apply the points of novelty test is legal error. "To consider the overall appearance of a design without regard to prior art would eviscerate the purpose of the 'point of novelty' approach, which is to focus on those aspects of a design which render the design different from prior art designs." *Winner Int'l Corp. v. Wolo Mfg. Corp.,* 905 F.2d 375, 376 (Fed. Cir. 1990).

Because both the ordinary observer test and the points of novelty test must be satisfied for design patent infringement to occur, Winner must prevail on its motion for summary judgment of non-infringement if either test is not satisfied. As shown below, neither test is satisfied.

## II.    THE ACCUSED WINNER PRODUCTS DO NOT INFRINGE THE '621 DESIGN PATENT

After construing the claimed design of the '621 design patent to factor out its functional aspects and applying the two tests for design patent infringement, the Court must conclude, as a mattter of law, that the accused Winner anti-theft products do not infringe and that Winner is entitled to summary judgment.

### A.    Construction of the Patented Design

The '621 design patent is entitled "Sliding Hook Portion of a Vehicle Steering Wheel Lock Assembly" and is directed to a useful article, not a purely ornamental design. *See OddzOn Products,* 122 F.3d at 1405 (distinguishing the situation in *Gorham,* in which the claimed design was "purely ornamental"). Accordingly, the design must be construed to eliminate the functional

- 4 -

aspects. *Id.* As will be shown below, most aspects of the design shown in the '621 design patent are entirely functional. Therefore, after the requisite construction, there is little left to the claimed design other than the specific, detailed shape of the distinctly diverging end portions of the hook segments of the rim-engaging member located at one end of the depicted product—which is not a feature of the accused Winner products.

One important functional aspect of the product shown in the drawings of the '621 design patent is the trapezoidal cross-sectional shape of the grooved or serrated section of the elongated rod. As shown in several prior-art utility patents,[3] this shape functions to mate properly with the locking mechanism of the anti-theft device. The Court's particular attention is directed to Figs. 3-5 of U.S. Patent No. 5,107,692 ("Chen '692"), attached as Exhibit A to the Moy Declaration.[4] This patent was considered by the Patent Examiner handling the application that issued as the '621 design patent. Figs. 3-5 of Chen '692 (with further reference to the text of the patent from column 4, line 55 through column 5, line 9) show how the shape of the grooves permit incorporation of a self-locking mechanism. The sloped surface 331 of each annular groove 33 enables the rod to be pulled freely to its extended position (toward the left in the drawings), because bearing member 43 can easily slide up the sloped surface against the force of a spring

---

[3] The '621 design patent issued from an application filed on June 9, 1994. Under 35 U.S.C. § 102(b), any patent issuing more than one year before this filing date is considered to be prior art with respect to the '621 patent. In addition, a U.S. patent would qualify as prior art with respect to the '621 design patent under 35 U.S.C. § 102(e)(2) if it issued from an application filed before the design of the '621 patent was conceived by the named inventor, Paul Yang. Activities performed outside the United States, however, may not be considered in determining a date of invention. 35 U.S.C. § 104. Winner thus presumes that the earliest invention date available to Mr. Yang, a resident of Taiwan, would be his U.S. filing date. Accordingly, this memorandum treats as prior art any patent issuing before June 9, 1993 or any U.S. patent having a filing date earlier than June 9, 1994.

[4] Similar grooved rods having the same trapezoidal cross sections also are shown in prior-art U.S. Patent 5,031,428 and U.S. Patent No. 5,042,278. *See* Moy Decl. Exhs. B, C.

positioned beneath the bearing member.  Once the bearing member 43 drops down into the next

groove, however, the vertical wall 332 of the groove prevents the rod from being retracted

(moved toward the right) without turning the key.

Another important functional feature of the article shown in the drawings of the '621

design patent is the theft-defeating effect obtained from the overall shape of the two-hook

member at the end of the rod that engages the rim of the steering wheel.  This function is

described in detail in U.S. Patent No. 5,778,709 ("Hsu '709"), Moy Decl. Exh. D.  In essence, the

two-hook rim-engaging member is shaped so that it overlaps a segment of the steering wheel rim

adjacent one of the spokes that connect the rim to the steering wheel hub so that the anti-theft

device cannot be removed merely by cutting through the rim.  As stated in Hsu '709:

> A pair of outwardly opening and laterally spaced apart
> wheel rim engaging hooks is provided on each wheel spanning
> member.  The wheel rim engaging hooks of each wheel pair straddle a
> steering wheel spoke while engaging the steering wheel rim.  This
> spoke straddling engagement prevents a thief from sliding the
> hooks to and out through a cut in the wheel rim such as done with a
> bolt cutter, and thereby removing the apparatus.

Hsu '709, column 1, lines 18-25.

A portion of Fig. 2 of Hsu '709 is reproduced here.

As explained in the text of Hsu '709 at column 4, lines 17-

49, this drawing illustrates how the various segments of the

basic two-hook rim-engaging member serve to cover up the

rim adjacent a spoke.  In this drawing, the rim-engaging

member consists of two hook segments (represented by

reference numerals 101, 103) connected by a curved rim

overlay segment (reference numeral 115).  The two hook segments are laterally spaced apart to



**Fig. 2 of Hsu '709**

- 6 -

span the steering wheel spoke and cover up the rim on each side of the spoke.  The overlay

segment covers up the rim between the two hook segments, so that the rim can be cut only

outside the arc covered by the two-hook rim-engaging member.  Even if the rim is cut where it is

exposed and removed, however, the shape of the rim-engaging member prevents a potential thief

from disabling the anti-theft device.

This functional aspect of the basic two-hook rim-engaging member of the '621 patent is

shown clearly in the pages from the Web site of the prior owner of the '621 patent, Keen Tools,

attached as Exhibit E to the Moy

Declaration.[5]  A portion of that Web site is

reproduced here.  Because the shapes and

positioning of the two hook segments and the

overlay segment prevent cutting of the rim

adjacent the steering wheel spoke, the device



**Photo from Keen Tools Web Site**

remains attached to the steering wheel even if the rim is completely removed above and below

the rim-engaging member.

Thus, the overall appearance of the product shown in the '621 design patent is dictated by

the purpose of the article—to preclude easy removal of the locking device from a steering wheel

by simply cutting the steering wheel's rim adjacent the spoke.  In this regard, the device must

include: (1) two laterally spaced-apart hook segments to span the steering wheel spoke and cover

up the rim on each side of the spoke; and (2) an overlay segment to cover up the rim between the

two hook segments and connect the two hook segments to the grooved rod.

_____

[5] The pages from the Keen Tools Web site attached to the Moy Declaration were
accessible in September 2002 but appear to have been taken off line since then.

Once these functional aspects of the design are disregarded, as required by controlling law governing design patent claim construction, the only aspects of the design shown in the drawings of the '621 design patent that are not dictated by the function of the device—and thus arguably remain protectable under design patent law—are features such as (a) the non-curved appearance of the overlay segment when viewed from the end as shown in Figs. 2 and 3; (b) the distinct diverging of the ends of the two hook segments, as shown in Figs. 2, 3, 6, and 7; (c) the particular shape of the hook segments in Figs. 4 and 5, which show them starting as a curve of constant radius adjacent the elongated rod and then terminating with a linear segment that extends beyond the end of the rod; and (d) the attachment of the overlay segment to the rod at a position spaced inwardly from the end of the rod.

## B.    The Accused Winner Products

The Court's attention is directed to the Clifford Declaration and the Winner Declaration for an understanding of the products accused of infringing the '621 design patent. The Clifford Declaration provides photographs of the sliding hook portion of Winner's current Double Hooks product, Clifford Decl., paras. 3-5 & Exhs. A, B, as well as the original Double Hooks product, which was accused of infringement by Keen Tools in 1999, *id.* paras. 6-8 & Exhs. C, D. The Winner Declaration, executed by Kevin Winner, President of Import Management Corporation, who has handled the sourcing of Winner's products for many years, attests to the time periods during which the two versions of the product have been sold and to the nature of the difference between them. *See* Winner Decl., paras. 1-7. The two products remain essentially the same from a design standpoint. The change was functional, a slight increase in the lateral spacing between the two hook ends to permit it to be used on steering wheels with wider spokes. *See id.* para. 7. The Winner Declaration also states that the sliding hook portion for all of Winner's current

- 8 -

double-hook steering wheel lock products (including the products specifically named in Lawman's Complaint: the Twin Hooks and The Club—Quad Hook System products) have the same ornamental configuration as the current Double Hooks product. Winner Decl., para. 8. This memorandum will refer to the accused products collectively by reference to the Double Hooks trademark.

With reference to Exhibit B of the Clifford Declaration, the sliding hook portion of Winner's product includes an elongated rod with a grooved section that appears as a series of trapezoids in cross section. A two-hook rim-engaging member is affixed to one end of the rod. The rim-engaging member includes a laterally extending overlay segment attached to the end of the rod and a pair of hook segments extending from the laterally opposite ends of the overlay segment.

The overlay segment is curved within a plane that forms an angle of about 45-60° with respect to the axis of the rod. As a result, when viewed along the axis of the rod, the overlay segment has a distinct concave-downward curvature. When viewed from the side, each of the hook segments consists of a substantially straight end portion connected to the overlay segment by a bent portion. The end portions of the hook segments are substantially parallel to each other, and appear parallel to the elongated rod when viewed from above or below.

The shapes of the sliding hook portions of Winner's Double Hooks products must be taken as uncontroverted facts. As will be shown below, comparing the properly construed design claim to the undisputed shapes of the accused products compels the conclusion that the accused Winner products do not infringe the '621 design patent and that Winner is entitled to summary judgment of non-infringement.

- 9 -

**C.    Winner's Double Hooks Products Do Not Infringe Under Either Test for Design Patent Infringement**

Winner's Double Hooks products do not use any non-functional aspects of the design shown in the '621 design patent, have a dissimilar appearance from the perspective of most of the patent's drawings, and do not include the only arguably novel aspect of the patented design. Accordingly, Winner's products cannot infringe the patent under either test for design patent infringement.

**1.    Ordinary Observer Test**

Where, as here, the product at issue is not a purely ornamental design, infringement under the ordinary observer test requires that the patentee "establish that an ordinary person would be deceived by reason of the common features in the claimed and accused designs that are ornamental," *OddzOn Products,* 122 F.3d at 1405.  The test also requires that the "claimed design" be defined by all of the drawings of the design patent at issue.  *Contessa Food,* 282 F.3d at 1378-79.

As shown below, neither Winner's originally accused Double Hooks product nor the current product includes any of the features of the design claimed by the '621 design patent after the requisite exercise in claim construction eliminates from consideration the functional aspects from the drawings.  Moreover, a direct comparison of the drawings of the '621 design patent with the accused products when viewed from similar perspectives demonstrates that the overall design claimed by the patent is substantially different from the appearance of the accused products.

- 10 -

Reproduced below are Fig. 2 of the '621 design patent and corresponding end views of Winner's original and current Double Hooks products.[6]



**Fig. 2 of the
'621 Design Patent**



**End View of
Winner's Original
Double Hooks
Product**



**End View of
Winner's Current
Double Hooks
Product**

The overlay segment of the '621 design patent is curved within a plane that is parallel to the elongated rod. As a result, when viewed along the axis of the rod from the end where it attaches to the rim-engaging member, the overlay segment of the rim-engaging member shown in the patent appears to be straight, as shown in Fig. 2. In addition, from this perspective the hook segments of the rim-engaging member of the '621 design patent appear to extend downwardly from the overlay segment at sharp, 90° angles.

As noted above, the overlay segments of the Winner Double Hooks products are curved within planes that form a substantial angle with respect to the rod. Accordingly, as shown in the photographs above, the overlay segment of each of the Winner products appears to be curved concave downward when viewed from the end along the axis of the grooved rod. Moreover, when viewed from the end, the Winner curved overlay segment intersects the two hook segments either tangentially or at an obtuse angle, rather than at a sharp right angle as seen in Fig. 2 of the '621 design patent. These views also show that the Winner products do not incorporate the

---

[6] The images of the Winner products included in this memorandum are taken from photographs included in Exhibits B and D of the Clifford Declaration.

feature of distinctly diverging hook ends, which are one of the fundamental ornamental features of the claimed design of the '621 design patent. Rather, the hook ends of the Winner products are substantially parallel to each other. These substantial differences also exist when the product is viewed from the perspective of Fig. 3 of the '621 design patent, a view along the rod's axis from the opposite end.

The absence of the diverging hook ends in the Winner products is shown even more clearly below, where Fig. 6 of the '621 design patent and corresponding top views of the original and current Winner Double Hooks products are reproduced.



**Fig. 6 of the
'621 Design Patent**



**Top View of
Winner's Original
Double Hooks
Product**



**Top View of Winner's
Current Double Hooks
Product**

As stated above, the hook ends of both the past and present Winner products are substantially parallel to each other. In the views immediately above, the hook ends also appear substantially parallel to the grooved rod. The shape of the rim-engaging members of the accused Winner products thus provides an ornamental presentation significantly different from that shown in the drawings of the '621 design patent, where the hook ends distinctly diverge from each other and from the rod (a similar distinction appears when analyzing the accused products from the perspective of Fig. 7). Winner submits that this difference alone precludes infringement under the ordinary observer test.

- 12 -

Finally, a side-by-side comparison of side views of the patented design and the accused products reveal that fundamental differences exist between the two designs with respect to any remaining non-functional aspects of Lawman's patented design. Reproduced below are a portion of Fig. 4 of the '621 patent showing a side view of the rim-engaging member and photographs of Winner's original and current Double Hooks products providing similar views.

  

**Fig. 4 of the
'621 Design Patent**

**Side View of
Winner's Original
Double Hooks
Product**

**Side View of Winner's
Current Double Hooks
Product**

These views show additional fundamental differences in the features of the rim-engaging member of the patented design and the shape used in the Winner products. In the claimed design of the '621 design patent, when viewed from the side (either Fig. 4 or its mirror image, Fig. 5), the overlay segment appears to be very short, and the hook segment traces a constant-radius curve through approximately a full 180° beginning at a point adjacent the grooved rod, before it terminates with a short, straight end portion that extends beyond the end of the rod and well beyond the point where the rim-engaging member attaches to the rod. In contrast, the side-view images of the rim-engaging members of Winner's products display a less elegant shape, appearing to comprise two substantially straight portions connected by a sharply curved or bent

- 13 -

portion.[7]  With respect to the current Winner product, the end portions of the hook segments do not extend beyond the end of the rod or beyond the rim-engaging member's point of attachment.

These views also depict the difference in where the rim-engaging member is attached to the grooved rod.  Whereas the claimed design of the '621 patent attaches the rim-engaging member at a point spaced inwardly from the end of the rod, the rim-engaging members of the Winner products are attached at the extreme ends of their rods.  Also note that the ends of the grooved rods for the Winner products do not exhibit the sharp, flat end shown in Fig. 4 of the '621 design patent.

If the hypothetical "ordinary observer" were to view the claimed design of the '621 design patent and the design employed by Winner's Double Hooks products side-by-side—as shown above—Winner submits that no reasonable observer would find them substantially the same or be deceived into purchasing one based on the belief that it was the other's design.  Moreover, when one considers only the non-functional, ornamental features of the two designs (to the extent such features exist), the differences in the two designs are profound.  As Lawman cannot meet its burden of proving infringement under the ordinary observer test, the Court should grant Winner's motion for summary judgment of non-infringement on the basis of this test alone.

### 2.    Points of Novelty Test

As stated above, failure to consider the points of novelty test is legal error.  The purpose of this test "is to focus on those aspects of a design which render the design different from prior art designs."  *Winner v. Wolo,* 905 F.2d at 376.  To assist the Court in applying the points of novelty test, Winner has submitted a number of prior art patents as Exhibits F-K to the Moy

---

[7] The straight portion nearer the rod is the downwardly angled overlay segment of the rim-engaging member.

Declaration. To the extent the article shown in the drawings of '621 design patent incorporates features shown in these prior art patents, those features are not novel.

Two of these patents—U.S. Patent No. 5,197,308 ("Pazik '308") (Moy Decl. Exh. F) and U.S. Patent No. 5,299,438 ("Chen '438") (Moy Decl. Exh. G)—are particularly pertinent to the point of novelty analysis. Each discloses a two-hook anti-theft design employing a pair of hook segments that open in the same direction and are laterally spaced apart to engage and cover up portions of a steering wheel rim on either side of a steering wheel spoke. The Court's attention is directed to Figs. 1 and 2 of Pazik '308 (Moy Decl. Exh. F) and Figs. 1 and 4 of Chen '438 (Moy Decl. Exh. G).

Each of these patents discloses a two-hook rim-engaging member incorporating one or more of the features of the '621 design patent that conceivably could be considered non-functional. For example, Chen '438 has a pair of hook segments that are connected by an overlay segment comprising a straight tubular portion and a flat plate (reference numeral 12). Because it *is* straight, this overlay segment would appear straight when viewed from one end of the device along the axis of the grooved rod, as in Figs. 2 and 3 of the '621 design patent. Moreover, each of the hook segments of Chen '438 includes a section of constant radius for approximately 180° and terminates with a linear end portion. Although the hook segments of Chen '438 are open back toward the grooved rod, Pazik '308 discloses a two-hook rim-engaging member with hook segments that are oriented in the same direction as the hook segments of the '621 patent, to engage the radially inward side of the steering wheel rim.

The remaining exhibits to the Moy Declaration (Exhibits H-K) are additional prior art patents that show other examples of two-hook designs in the context of a steering-wheel-mounted anti-theft device. The Court's attention is directed to (a) hook-shaped lugs 3 in Figs. 1

- 15 -

and 5 of U.K. Patent Specification No. 1,127,524 (Moy Decl. Exh. H); (b) hooks 12, 13 in Figs.
2 and 3 of U.S. Patent No. 5,024,069 (Moy Decl. Exh. I); (c) hook 21 in Figs. 1 and 2 of U.S.
Patent No. 5,052,201 (Moy Decl. Exh. J); (d) and hook-shaped pawl members 12 in Figs. 1, 2,
and 4 of U.S. Patent No. 5,199,284 (Moy Decl. Exh. K).

Taken altogether, these patents disclose many variations in hook shapes, confirming that
this is a crowded field requiring the claimed design to be construed narrowly. *See Litton,* 728
F.2d at 1444. To prevail on its infringement claim under the points of novelty test, Lawman
must show that the accused Winner products incorporate ***novel*** features of the design, that is,
features not present in any of these prior art examples. The only arguably novel feature to which
Lawman could point is the substantial and distinct divergence of the two hook segments away
from each other at their extreme ends.

The standard approach for designing a pair of hook segments, as shown in the prior art
patents discussed above, is to make their end portions substantially parallel. The hook segments
of the accused Winner products also have substantially parallel, non-diverging end portions.
Accordingly, Winner's products do not incorporate the only arguable point of novelty of the '621
design patent and thus cannot infringe under the second test for design patent infringement.
Therefore, Lawman cannot meet its burden of proving infringement under either required test.

D.      **Modifying the Angle of Attachment for the Rim-Engaging
        Member of Winner's Product Demonstrates How Different
        Its Shape Is from the Patented Design**

As noted above, one of the differences between the hook design shown in the '621 design
patent and that employed in the accused Winner products is the angle of attachment between the
curved overlay segment and the elongated rod: the angle is substantially zero for the patented
design and is about 45-60° for Winner's Double Hooks products. To remove this variable from

- 16 -

the comparison, a modified Double Hooks sliding hook portion was prepared—one having the overlay segment of the rim-engaging member oriented so that it was curved in a plane substantially parallel to the elongated rod. Photographs of this modified hook portion are attached as Exhibits F-H to the Clifford Declaration.[8]

On the following page are a series of images providing side-by-side comparisons between figures of the '621 design patent and corresponding views of the current version of Winner's Double Hooks modified to provide an attachment angle similar to that of the patented design, thereby providing an end view that is closer to that of Fig. 2 of the patent. These images dramatically illustrate the profound differences between the ornamental configuration of the rim-engaging member of the '621 design patent and the shape of the corresponding member in Winner's accused products. By attaching the rim-engaging member to the rod so that the plane of the overlay segment is substantially parallel to the rod axis, an end view of the modified Winner product shares certain ornamental elements with the product shown in Fig. 2 of the '621 design patent, such as an apparently straight overlay segment having a right-angle connection to the hook segments. Significantly lacking from the end view of the modified Winner product, however, is the characteristic feature of the patent design: the diverging end portions of the hook segments shown in Fig. 2 of the '621 design patent.

---

[8] A photograph of the components used for this mock up is attached as Exhibit E to the Clifford Declaration.



**Fig. 2 of the
'621 Design Patent**



**End View of Modified
Winner Double Hooks**



**Fig. 6 of the
'621 Design Patent**



**Top View of Modified
Winner Double Hooks**



**Fig. 4 of the
'621 Design Patent**



**Side View of
Modified Winner
Double Hooks**

Moreover, the modification aimed at more closely mimicking the patented design in one respect results in the other views being even more dissimilar when compared to the design patent drawings. For example, in the top view of the modified Winner product, the end portions of the hook segments essentially disappear from view. This is in stark contrast to Fig. 6 of the '621 design patent, where the end portions are shown prominently in their splayed orientation. Finally, when viewed from the side, the appearance of the hook portion of the modified Winner product bears no resemblance to the corresponding side view of Fig. 4 of the '621 design patent.

Furthermore, the modification required to increase the similarity in the end-view appearance results in a product of limited utility. As explained by Kevin Winner, the side view of the modified Winner product shows that the modification would substantially reduce the interference between the end portions of the hook segments of the rim-engaging member and a steering wheel rim and greatly diminish the reliability of the anti-theft device. Winner Decl. para. 11. A potential thief would be able to pull the modified product off the steering wheel rim with only a moderate amount of force. *Id.*

The inescapable conclusion from studying the side-by-side comparisons of the drawings of the '621 design patent and Winner's accused products—in both existing and modified forms—is that the shape and orientation of the rim-engaging member of Winner's products are significantly different from that shown in the drawings of the '621 design patent. Accordingly, the accused Winner products cannot infringe the design patent.

## III.    CONCLUSION

As shown above, a side-by-side comparison of the drawings of Lawman's '621 design patent and corresponding views of the accused Winner products reveals numerous material differences between the two designs. Furthermore, the patented design has only a few, if any, non-functional features, none of which is shared by the accused Winner products. Thus, under the ordinary observer test for design patent infringement, the patented design and the accused Winner products cannot be considered as being substantially the same. Moreover, as Winner's products do not include the only arguably novel feature of the patented design, they cannot infringe the '621 patent under the points of novelty test. Indeed, the shape of Winner's two-hook rim-engaging member is so different from that shown in the '621 design patent that the product ceases to work if the angle of attachment for Winner's product is modified to mimic that of the

- 19 -

patented design.  Winner submits that its products do not infringe the '621 design patent as a

matter of law so that it is entitled to summary judgment of non-infringement.

Respectfully submitted,

Date: _Sept. 23, 2003_

_Philip J. Moy Jr._
Philip J. Moy Jr.
pmoy@faysharpe.com
Robert V. Vickers
Jude A. Fry
Fay, Sharpe, Fagan, Minnich & McKee, LLP
1100 Superior Avenue, Seventh Floor
Cleveland, Ohio  44114-2579
Telephone: 216-861-5582
Facsimile: 216-241-1666

Christopher A. Rothe
crothe@ddhs.com
Attorney I.D. No. 84,023
Dann Dorfman Herrell and Skillman, P.C.
1601 Market Street, Suite 2400
Philadelphia, PA  19103-2307
Telephone: 215-563-4100
Facsimile: 215-563-4044

Attorneys for Defendant
Winner International, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on September **23**, 2003, a copy of the foregoing **DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT** and copies of the **DECLARATION OF GARY M. CLIFFORD**, the **DECLARATION OF KEVIN WINNER**, and the **DECLARATION OF PHILIP J. MOY JR.** were served on the plaintiff's counsel via Federal Express overnight courier addressed to Roberta Jacobs-Meadway, Esquire, Ballard, Spahr Andrews & Ingersoll, LLP, 1735 Market Street, 51st Floor, Philadelphia, PA 19103.

Philip J. Moy Jr.
Fay, Sharpe, Fagan, Minnich & McKee, LLP
1100 Superior Avenue, Seventh Floor
Cleveland, Ohio 44114-2579
Telephone: 216-861-5582
Facsimile: 216-241-1666

- 21 -