## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LAWMAN ARMOR CORPORATION,   )
                                 )
        **Plaintiff,**           )
                                 )     **Civ. Action No. 02-CV-4595**
        **v.**                 )
                                 )     **Hon. Robert F. Kelly**
**WINNER INTERNATIONAL, LLC, and** )
**WINNER HOLDING LLC,**        )
                                 )
        **Defendants.**         )

## PROPOSED ORDER

AND NOW, this _____ day of _____, 2004, it is hereby

ORDERED that Plaintiff's Motion to Stay Proceedings pending the outcome of Plaintiff's appeal

to the United States Court of Appeals for the Federal Circuit in <u>Lawman Armor Corp. v. Master

Lock Co.,</u> Civil Action No. 02-6605 (E.D. Pa., filed Aug. 5, 2002) is hereby GRANTED.


BY THE COURT:



_____
      Kelly, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LAWMAN ARMOR CORPORATION,   )
                                       )
       **Plaintiff,**         )
                                       )      **Civ. Action No. 02-CV-4595**
       **v.**            )
                                       )      **Hon. Robert F. Kelly**
WINNER INTERNATIONAL, LLC, and )
WINNER HOLDING LLC,           )
                                       )
      **Defendants.**     )

## PLAINTIFF'S MOTION TO STAY PROCEEDINGS

Lawman Armor Corp. ("Lawman") hereby respectfully moves to stay the present

proceedings pending the outcome of Lawman's appeal to the United States Court of Appeals for

the Federal Circuit in <u>Lawman Armor Corp. v. Master Lock Co.</u>, Civil Action No. 02-6605 (E.D.

Pa., filed Aug. 5, 2002), because Lawman's appeal to the Federal Circuit in the Master Lock case

involves the same patent at issue in the present case, U.S. Design Patent No. D357,621.

      The bases for the motion are set forth in the supporting Memorandum of Law and

Exhibits filed herewith.

                      Respectfully submitted,

                      *Corey Field*

                      Roberta Jacobs-Meadway
                      Lynn E. Rzonca
                      Corey Field
                      BALLARD SPAHR ANDREWS & INGERSOLL, LLP
                      1735 Market Street, 51st Floor
                      Philadelphia, PA 1910
                      (215) 665-8500

Date:  March 22, 2004

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LAWMAN ARMOR CORPORATION, )
                                      )
        Plaintiff,            )
                                        )     **Civ. Action No. 02-CV-4595**
        v.                 )
                                        )     **Hon. Robert F. Kelly**
WINNER INTERNATIONAL, LLC, and )
WINNER HOLDING LLC,         )
                                        )
        Defendants.       )

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
## TO STAY PROCEEDINGS

Plaintiff Lawman Armor Corp. ("Lawman") respectfully moves to stay these proceedings pending the disposition of Lawman's appeal to the United States Court of Appeals for the Federal Circuit in another case, Lawman Armor Corp. v. Master Lock Co., Civil Action No. 02-6605 (E.D. Pa., filed Aug. 5, 2002).

Both this case and the Master Lock case involve the same patent: U.S. Design Patent No. D357,621 ("the '621 Patent"). Lawman's appeal in the Master Lock case will present issues of law that are central to the present case, including the issues of what patents constitute relevant prior art to the '621 Patent and what features constitute its points of novelty.

The balance of interests fully supports this Court's exercise of its discretion in granting a stay. As established in this Memorandum, the issues to be presented to the Federal Circuit in the Master Lock case would directly affect any future infringement analysis conducted by this Court concerning the '621 Patent in this case. Accordingly, Lawman can demonstrate a clear case of hardship if this case is not stayed pending the Federal Circuit's ruling. Conversely, the defendants ("Winner") would not be harmed by any delay resulting from a stay. Winner's sale

of the Accused Products have not been enjoined and the products continue to be sold. Winner cannot show any harm from a stay because Winner previously argued for, and was granted, a stay in this case, at which time Winner never argued or suggested it might be harmed from the inevitable delay caused by a stay. Finally, both parties will be able to proceed more efficiently in this case if disputed issues concerning the '621 Patent are settled by the Federal Circuit. For all of these reasons, Lawman asks the Court to enter a stay pending appeal.

## BRIEF BACKGROUND

In this case, Lawman accuses Winner of infringing the '621 Patent. Discovery closed on November 4, 2003. Winner's Motion for Summary Judgment of Non-Infringement is currently pending.

Concurrently with the present case, Lawman brought suit to enforce its rights in the '621 patent against another entity: Master Lock Company. That case, Civil Action No. 02-6605, was also before this Court. On March 11, this Court issued a Memorandum and Order granting Master Lock's Motion for Summary Judgment of Non-Infringement. A copy of the March 11, 2004 Memorandum and Order is attached hereto as Exhibit A (the "Master Lock Order").

In the Master Lock Order, the Court first construed the '621 Patent, then compared the accused Master Lock devices to the '621 Patent under the ordinary observer test, concluding that the Master Lock devices are not substantially similar to the '621 Patent. (Lawman v. Master Lock, Mem. and Order at p. 16.)

The Court deemed this finding sufficient as a matter of law to grant Master Lock's Motion for Summary Judgment of Non-Infringement, and the Court noted that "[s]ometimes, courts elect to forego the point of novelty test upon concluding as a matter of law that the accused devices are not substantially similar under the ordinary observer test." (Lawman v.

- 2 -

<u>Master Lock</u>, Mem. and Order at p. 16.)

The Master Lock Court then stated that "[i]n the interest of completeness" it would examine the point of novelty test. (<u>Lawman v. Master Lock</u>, Mem. and Order at p. 17.) In the following dicta, the Master Lock Court conducted a point of novelty test on the '621 Patent in which it identified U.S. Utility Patent Number 5,197,308 ("the '308 Patent") as prior art to the '621 Design Patent. The Master Lock Court's analysis further stated that "Lawman's nine points of novelty are not novel since they are all contained within prior art." (<u>Lawman v. Master Lock</u>, Mem. and Order at p. 20.)

On March 16, 2004, Lawman filed a Notice of Appeal in the Master Lock case, appealing the Master Lock Order to the Court of Appeals for the Federal Circuit. A copy of the Notice of Appeal is attached hereto as Exhibit B.

Lawman's Appellate Brief will address whether there was reversible error in the Master Lock Court's determinations as to the scope and content of the prior art to the '621 Patent, whether the '308 Patent is relevant prior art to the '621 Patent, and whether the conclusions concerning the points of novelty in the '621 Patent constitute reversible error.

In the present case, Winner's Motion for Summary Judgment of Non-Infringement is pending before this Court. When considering Winner's Motion, this Court may address the same issues concerning what is relevant prior art to the '621 Patent and what constitutes the points of novelty in the '621 Patent. Thus there is a likelihood that this Court could adopt the prior art and point of novelty analysis in the Master Lock case.

## ARGUMENT

A District Court's power to grant a stay is part of its inherent power to manage cases in ways that will promote fair, efficient adjudication. <u>Gold v. Johns-Manville Sales Corp.</u>, 723 F.2d

1068, 1077 (3d Cir. 1983), citing Landis v. North American Co., 299 U.S. 248, 254-55 (1936).

In this Circuit, "a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." Bechtel Corp. v. Local 215, Laborers' Int'l Union, 544 F.2d 1207 (3d Cir. 1976). A court asked to grant a stay must balance the hardship to the movant if the stay is denied against the harm to the non-movant if the stay is granted. Gold v. Johns-Manville at 1075-76. Thus even where the non-movant would arguably be prejudiced by postponing the litigation, a stay will be granted where the movant has met their burden of showing a clear case of hardship or inequity in the absence of a postponement. Alfred Sicoli, et al., v. Nabisco Biscuit Co., No. Civ. A. 96-6053, 1998 WL 614840 (E.D. Pa. Sept. 10, 1998).

In patent cases, stays will be granted where the stay would allow the Federal Circuit to resolve issues that may be dispositive. Micron Technology, Inc. v. Rambus Inc., 189 F. Supp. 2d 201, 211 (D. Del. 2002). Stays are also granted in patent cases where the litigation is impacted by actions in another jurisdiction affecting the patent in suit, for example a reexamination by the PTO. In re Laughlin Products, Inc., 265 F. Supp. 2d 525 (E.D. Pa. 2003).

Lawman meets all requirements for a stay. There is clear hardship to Lawman if the Motion to Stay is not granted. The Master Lock Order dicta concerning what patents constitute relevant prior art in relation to the '621 Patent, and the conclusions reached, would allow Winner to argue in this case that there are no points of novelty in the '621 Patent. Therefore, even if this court found that Winner's accused devices are substantially similar to Lawman's '621 Patent, Winner could prevail under the points of novelty test.

In the face of this hardship to Lawman, the Court need only conduct a balancing test weighing Lawman's hardships against Winner's harms if Winner can in fact show that any harm

would result from a stay. This Winner cannot do because Winner's Accused Devices have not been enjoined and Winner may continue to sell them. More tellingly, this Court granted Winner's Motion to Stay filed on October 11, 2002, in which Winner moved for a stay based on an allegedly pending action in Florida involving the '621 Patent. Winner made no assertion that it would be harmed by any delay resulting from a stay, and it would not be harmed by a stay now.

Even if Winner now argues that it would be harmed by a stay, the presence of the potentially dispositive dicta in the Master Lock Order heavily outweighs any such argument. The Master Lock Order creates the possibility of inconsistent determinations, multiple appeals, and inefficiencies as well as a clear hardship to Lawman because Lawman has now appealed that Order to the Federal Circuit. The crucial issues of prior art and points of novelty in the '621 Patent simply should be decided by this Court after the Federal Circuit rules on Lawman's appeal in the Master Lock case.

## CONCLUSION

Any potential harm to Winner caused by any delay in this proceeding is outweighed by the clear hardship to Lawman and the inherent inequity if these proceedings continue pending disposition of the appeal to the Federal Circuit in the Master Lock case. The motion for the stay, accordingly, should be granted.

Roberta Jacobs-Meadway
Lynn E. Rzonca
Corey Field
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 1910
(215) 665-8500

Date: March 22, 2004

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAWMAN ARMOR CORPORATION, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 02-6605 |
| | : | |
| MASTER LOCK COMPANY, | : | |
| Defendant. | : | |

**MEMORANDUM**

ROBERT F. KELLY, Sr. J.                              MARCH 11, 2004

## I. INTRODUCTION

On August 5, 2002, the Plaintiff, Lawman Armor Corporation ("Lawman") filed

suit against the Defendant, Master Lock Company ("Master Lock"), alleging that Master Lock's

two-hook automobile wheel locks infringe on design patent number 357,621 (the "621 patent").

Lawman is the exclusive licensee of the 621 patent. Presently before this Court is Master Lock's

Motion for Summary Judgment of Non-Infringement. For the following reasons, Master Lock's

Motion will be granted.

## II. FACTUAL BACKGROUND

Automobile wheel locks act as anti-theft devices. Lawman became the exclusive

licensee of the 621 patent in July of 2002. Approximately one month after Lawman became the

exclusive licensee of the 621 patent, it filed this patent infringement suit against Master Lock. In

its Complaint, Lawman initially alleged that Master Lock's wheel lock model 252, as well as

other unnamed models, infringe on the 621 patent. Lawman now states that Master Lock's wheel

lock models 238, 248, 249, 260 and 263, in addition to model 252, infringe on the 621 patent.

To assist us in evaluating this Motion for Summary Judgment of Non-Infringement, Master Lock

provided samples of the products Lawman alleges infringe on the 621 patent.[1]

While Lawman has a design patent for its two-hook automobile wheel locks,

Master Lock also has a design patent for the shape of the hooks on its products. In April 2001,

the Patent Office granted design patent number 440,861 (the "861 patent"). The inventor of the

861 patent is Roy Alden Thompson and Master Lock is listed as the patent's assignee. The only

claim for the 861 patent is "[t]he ornamental design for a quad-hook for a steering wheel lock, as

shown and described." The Patent Office had the opportunity, while reviewing the application

for the 861 patent, to analyze whether the 861 application was patentably distinct from the 621

patent.[2]

On August 6, 2003, Master Lock filed its Motion for Summary Judgment of Non-

Infringement. Master Lock sets forth its proposed claim construction of the 621 patent within its

Brief. In addition, Master Lock argues that its two-hook wheel locks do not satisfy the ordinary

observer or point of novelty test necessary for a finding of infringement. However, Lawman

---

[1] Master Lock also submitted Lawman's commercial embodiment of the 621 patent. However, we have not considered Lawman's commercial embodiment in conducting our infringement analysis. Rather, we have properly analyzed the 621 patent claims against the alleged infringing products. See Zenith Labs., Inc. v. Bristol-Myers Squibb Co., 19 F.3d 1418, 1423 (Fed. Cir. 1994)(citing Martin v. Barber, 775 F.2d 1564, 1567 (Fed. Cir. 1985))(stating "it is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent"). Master Lock was unable to locate model number 260 due to the fact that model 260 was discontinued. However, Master Lock did provide pictures of model 260. Master Lock additionally states that the configuration of the 260 model is the same as the 252 model.

[2] The 621 patent is listed as a cited reference in the 861 patent.

argues that Master Lock's claim construction is flawed. Lawman first argues that Master Lock's proposed claim construction of the 621 patent is incorrect and counters with its own proposed claim construction. Lawman additionally argues that material issues of fact still exist with respect to the ordinary observer and point of novelty tests so as to preclude summary judgment.

## III. <u>STANDARD</u>

"Summary judgment is appropriate when, after considering the evidence in the light most favorable to the nonmoving party, no genuine issue of material fact remains in dispute and 'the moving party is entitled to judgment as a matter of law.'" <u>Hines v. Consol. Rail Corp.</u>, 926 F.2d 262, 267 (3d Cir. 1991)(citations omitted). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986). The moving party carries the initial burden of demonstrating the absence of any genuine issues of material fact.[3] <u>Big Apple BMW, Inc. v. BMW of N. Am. Inc.</u>, 974 F.2d 1358, 1362 (3d Cir. 1992). Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that demonstrates that there is a genuine issue of fact for trial. <u>See id.</u> at 1362-63. Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

---

[3] "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" <u>Compton v. Nat'l League of Prof'l Baseball Clubs</u>, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998), <u>aff'd</u>, 172 F.3d 40 (3d Cir. 1998)(citations omitted).

Finally, "'summary judgment is as appropriate in a patent case as it is in any other case.'" See

Desper Prods., Inc. v. QSound Labs, Inc., 157 F.3d 1325, 1332 (Fed. Cir. 1998)(quoting C.R.

Bard, Inc. v. Advanced Cardiovascular, Inc., 911 F.2d 670, 672 (Fed. Cir. 1990)).

## IV. DISCUSSION

Determining whether a product infringes upon a design patent is a two-step

process. First, the Court must give its claim construction of the design patent. See Elmer v. ICC

Fabricating, Inc., 67 F.3d 1571, 1577 (Fed. Cir. 1995)(citing Markman v. Westview Instruments,

Inc., 52 F.3d 967, 976 (Fed. Cir. 1995)(en banc), aff'd, 517 U.S. 370 (1996))(stating

"[d]etermining whether a design patent claim has been infringed requires, first, as with utility

patents, that the claim be properly construed to determine its meaning and scope"). Second, the

properly construed claim must satisfy two tests. Initially, the properly construed claim must be

compared to the allegedly infringing devices under the ordinary observer test. See Elmer, 67

F.3d at 1577. The standard under the ordinary observer test was set forth over a century ago by

the United States Supreme Court:

> [I]f in the eye of the ordinary observer, giving such attention as a
> purchaser usually gives, two designs are substantially the same, if
> the resemblance is such as to deceive such an observer, inducing
> him to purchase one supposing it to be the other, the first one
> patented is infringed by the other.

Gorham v. White, 81 U.S. (14 Wall.) 511, 528 (1871). Moreover, the allegedly infringing

devices must satisfy the point of novelty test. The point of novelty test asks "whether the

accused design appropriates the points of novelty that distinguish the patent design from the prior

art." See Catalina Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277, 1286-87 (Fed. Cir.

2002)(citing Contessa Food Prods. Inc. v. Conagra, Inc., 282 F.3d 1370, 1377 (Fed. Cir. 2002)).

4

If either the ordinary observer or the point of novelty test is not satisfied, there can be no infringement. See Contessa Food Prods., 282 F.3d at 1377 (citing Unidynamics Corp. v. Automatic Prods. Int'l, Ltd., 157 F.3d 1311, 1323 (Fed. Cir. 1998)). The Court will now turn its attention to the issue of claim construction before it moves onto the ordinary observer and point of novelty tests.

### A. CLAIM CONSTRUCTION

#### 1. Relevant Case Law

The United States Court of Appeals for the Federal Circuit ("Federal Circuit") has emphasized that claim construction is strictly within the purview of the Court to decide. See Markman, 52 F.3d 983-84. The 621 patent is a design patent and reads as follows, "[t]he ornamental design for a sliding hook portion of a vehicle steering wheel lock." Typically, courts arrive at a written claim construction that evokes a visual image consistent with the claimed design. Such a written description must evoke a visual image constant with the claimed design rather than merely represent the general design concept. See Durling v. Spectrum Furniture Co., Inc., 101 F.3d 100, 104 (Fed. Cir. 1996)(stating district court erred when its verbal description did not evoke a visual image consonant with the claimed design but rather merely represented the general design concept); see also, OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1405 (Fed. Cir. 1997)(agreeing with district court's claim construction that construes design patent to its overall ornamental visual impression rather than to the broader general design concept).

In Durling, the Federal Circuit rejected the District Court's description of a design

patent because it did not evoke a visual image of the claimed design.[4]  See Durling, 101 F.3d at
104.  In that case, the District Court gave the following description of the design patent: "[t]he
look that the patent-in-suit presented is a sectional sofa with double rolls of upholstery under the
seating area which curve accurately upward under the end tables.  The end tables have the
appearance of little vertical support."  Id.  In rejecting the District Court's description, the
Federal Circuit set forth the following description as the proper claim construction:

> [A] contiguous three-piece sectional sofa group containing two
> sofa sections at approximately right angles to each other with a
> triangular corner table at their juncture.  On the sides away from
> the corner table, each sofa section has rounded corners and
> includes a bolster pillow as an armrest.  In addition, each sofa
> section at the end adjacent to the corner table, follows along the
> bottom of the sofa towards the other end, and curves upwardly (i.e.,
> sweeps upward) through a 90° angle to truncate at a horizontal
> plane upon which the end table rests.

Id.  In rejecting the District Court's construction in favor of its own, the Federal Circuit stated
that the District Court erred by focusing on the design concept of the patent, rather than its
overall visual appearance.  See id.

     The Federal Circuit also had the opportunity to review a District Court's claim
construction of a design patent in OddzOn Products.  In that case, the District Court gave the
following claim construction:

> [A] ball shaped like a football, with a slender, straight tailshaft
> projecting from the rear of the football.  In addition, the '001
> Patent design has three fins symmetrically arranged around the
> tailshaft, each of which has a gentle curve up and outward which
> creates a fin with a larger surface area at the end furthest from the

---

[4] While Durling involved a determination of patent invalidity, it has applicability in
construing a design patent claim in an infringement case.  See Minka Lighting, Inc. v. Craftmade
Int'l, Inc., No. 00-0888, 2001 WL 1012685, at *20 (N.D. Tex. Aug. 20, 2001).

> ball. The fins flare outwardly along the entire length of the
> tailshaft, with the front end of the fin extending slightly up along
> the side of the football so that the fins seemingly protrude from the
> inside of the football.

OddzOn Prods., 122 F.3d at 1400 (detailing District Court's claim construction). The Federal

Circuit agreed with the District Court's claim construction, noting that its claim construction

"properly limits the scope of the patent to its overall ornamental visual impression, rather than to

the broader general design concept of a rocket-like tossing ball." Id. at 1405 (citing Durling, 101

F.3d at 104). In construing the 621 claim, I will create a construction that limits the scope of the

621 patent to its overall visual impression rather than its broader design concept so as to be in

line with Durling and OddzOn Products.

    "The Federal Circuit has held that design patents have a narrow scope, limited to

what is shown in the drawings accompanying the patent application." Nat'l Diamond Syndicate,

Inc. v. Flanders Diamond USA, Inc., 264 F. Supp.2d 631, 639 (N.D. Ill. 2003)(citations omitted).

"A design patent protects the non-functional aspects of an ornamental design as shown in the

patent." Minka Lighting, Inc. v. Craftmade Int'l, Inc., No. 00-0888, 2002 WL 1331883, at *2

(N.D. Tex. June 14, 2002)(citing Elmer, 67 F.3d at 1577; KeyStone Retaining Wall Sys., Inc. v.

Westrock, Inc., 997 F.2d 1444, 1450 (Fed. Cir. 1993)). In determining whether something is to

be considered ornamental or functional, the Federal Circuit has stated that "[w]hen there are

several ways to achieve the function of an article of manufacture, the design of the article is more

likely to serve a primarily ornamental purpose." L.A. Gear, Inc. v. Thom McAn Shoe Co., 988

F.2d 1117, 1123 (Fed. Cir. 1993). For example, the Federal Circuit recently decided whether a

design patent for an inset door and frame combination was being infringed by its competitors.

See Door-Master Corp. v. Yorktowne, Inc., 256 F.3d 1308, 1310 (Fed. Cir. 2001).  In Door-

Master, the issue was raised as to whether a portion of the design, namely the rear features of the

door, should be considered as part of the protected design.  See id. at 1313.  The Federal Circuit

determined that the rear features were not functional, and that they, therefore, were proper bases

for design protection because "[m]any different configurations of those features (oval, triangular,

etc.) could perform the same functions of an integrated door and frame."  Id.

Where features in a design patent are not desired to be claimed, the patentee is

entitled to show the features in broken lines to exclude those features from the claim.  See

Contessa Food Prods., 282 F.3d 1370, 1378 (Fed. Cir. 2002)(citation omitted).  Where a patentee

fails to show such features in broken lines, this "signals inclusion of the features in the claimed

design."  Id. (citing Door-Master, 256 F.3d at 1313).  The figures in the 621 patent do not

delineate any broken lines.  This signals that the patentee intended to protect the entire design as

pictured, not just a portion thereof.

### 2. 621 Patent's Claim Construction

Both parties have submitted their proposed claim construction.  After reviewing

the proposed claim constructions, along with the 621 patent itself, I make the following claim

construction:

> The 621 patent is directed to the sliding hook portion of a vehicle
> steering wheel lock assembly.  The patent depicts two hooks, a
> shaft and the intersection between the shaft and the hooks.  The
> shaft has four different sections.  The shaft section furthest from
> the hooks is cylindrical and smooth.  The next shaft section
> contains notches or grooves in a particular pattern and dimensions
> as shown, which completely encircle the shaft.  Figures 6 and 7
> show that the notches or grooves are what would generally be
> considered a trapezoidal shape.  The third shaft section is again

8

cylindrical and smooth and roughly the same diameter as the first
shaft section. The fourth and final shaft section is cylindrical and
smooth but has a larger diameter than the first and third shaft
sections.

The 621 patent also depicts two hooks. The hooks hang from the
shaft and face outward away from the shaft. The hooks have the
same profile as shown in Figures 4 and 5 which resembles a C-
shape. The ends of the hooks are not parallel to each other as
shown in Figures 6 and 7. There is a connective segment between
the two hooks that is semi-circular, appearing to resemble a U as
shown in Figure 6. The overall ornamental appearance of the
hooks portion, from the perspective in Figure 6 is like an M with a
curved middle section.

The intersection of the hooks and the shaft is a circle on top of and
centered on a relatively straight portion when viewed in Figures 2
and 3. When viewed in Figures 6 and 7, the shaft intersects the
connective hooks segment at its center. The shaft extends past the
connective hook segment as shown in Figures 6 and 7.

I find that such construction properly "limits the scope of the patent to its overall

ornamental visual impression rather than to the broader general design concept." OddzOn

Prods., 122 F.3d at 1405; see Lee v. Dayton-Hudson Corp., 838 F.2d 1186, 1188 (Fed. Cir.

1988)(stating district court properly viewed proportions, carving, as well as the polished finish

and appearance to determine infringement of design patent). Additionally, I find that my claim

construction properly states the ornamental rather than the functional aspects of the 621 patent.

See Keystone Retaining Wall Sys., 997 F.2d at 1450 (citing Lee, 838 F.2d at 1188-89 (stating

"[a] design patent protects the non-functional aspects of an ornamental design as shown in the

patent"); see also, Hsin Ten Enter. USA, Inc. v. Clark Enters., 149 F. Supp.2d 60, 63 (S.D.N.Y.

2001)(stating "[i]f a design contains both functional and non-functional elements, the court must

identify the non-functional aspects to construe the scope of the design patent. A particular

feature is ornamental if the functional aspect or purpose could be accomplished in many other

9

ways")(internal quotation and citations omitted). We will now analyze Master Lock's products under the ordinary observer and point of novelty tests, keeping in mind that both tests need to be met for a finding of infringement.

## B. ORDINARY OBSERVER TEST

"The ordinary observer test requires the fact-finder to compare the two designs and determine whether the patented design as a whole is substantially the same in appearance as the accused design." Tropicana Prods., Inc. v. Land O'Lakes, Inc., 286 F. Supp.2d 343, 345 (D. Del. 2003)(citing Braun Inc. v. Dynamics Corp. of Am., 975 F.2d 815, 820 (Fed. Cir. 1992)). To compare the designs, we need not look beyond the 621 patent and Master Lock's products. See id.; see also Hosley Int'l Trading Corp. v. K Mart Corp., 237 F. Supp.2d 907, 911 (N.D. Ill. 2002)(citing Braun, 975 F.2d at 821)(stating "Gorham does not prohibit trier of fact from relying exclusively or primarily on a visual comparison of the patented design and the accused device's design in finding design patent infringement"). In this case, after reviewing the products at issue and the 621 patent, we find that the designs are not substantially similar.

When Master Lock moved for summary judgment in August 2003, the only model it cited to in its non-infringement analysis was model 252. Master Lock states that up until that point in the litigation, Lawman had only alleged that model 252 infringed on the 621 patent. However, much of the discovery in this case occurred after August, 2003. Thus, in its Reply Brief filed in November 2003, Master Lock indicated that it had learned that Lawman was now alleging that models 238, 248, 249, 260, 263 as well as model 252 infringed. Master Lock states that this Court's analysis should remain the same since the configuration of all of its models is the same. Lawman argues that these other models differ from the model 252 and that this

10

difference raises a triable issue of fact. I disagree. As noted previously, a court can as a matter of law declare that a product or device does not infringe on a design patent upon a visual comparison. See Tropicana Prods., 286 F. Supp.2d at 345; see also, Bush Indus., Inc. v. O'Sullivan Indus., Inc., 772 F. Supp. 1442, 1450 (D. Del. 1991)(stating upon reviewing pictures of commercial pieces, ordinary observer would not be confused). I have had the opportunity to view models and/or pictures of Master Lock's products. Lawman has provided no evidence to show that the design of Master Lock's other products differs from the 252 model despite its assertions. Indeed, Lawman's own expert supports this point. For example, Lawman's expert recently had the ability to examine model number 249, yet he found the differences between model 249 and 252 to be too small and insignificant to alter his infringement analysis. Lawman had the ability to set forth the design differences between Master Lock's products, yet it has failed to come forward with any difference among these products. As stated previously, I have viewed samples and/or pictures of Master Lock's products and find that my infringement analysis applies to all of the allegedly infringing Master Lock products.

## 1. Relevant Case Law

As mentioned earlier, design patents have almost no scope. See In re Mann, 861 F.2d at 1582. Recently, the District Court of Delaware had the opportunity to decide a design patent case in Tropicana Products., Inc. v. Land O'Lakes, Inc., 286 F. Supp.2d 343. In that case, Tropicana sought a declaration that its bottle did not infringe on Land O'Lakes design patent. See id. at 344. That court stated that Tropicana's bottle did not infringe on Land O'Lakes' patent because it did not meet the ordinary observer test. See id. at 345. The court specifically found that:

11

> The general appearance of the '813 patent [Land O'Lakes' patent]
> design is that of a flaring bell atop a taller, narrower flaring bell (or
> an hourglass). In contrast, the Tropicana bottle looks like a sphere
> atop a straight cylinder (or an orange suspended above a juice
> glass). Because of these differences, I conclude as a matter of law
> that the Tropicana bottle does not infringe under the ordinary
> observer test.

Id.

Other design patent cases have similarly found that the accused devices do not infringe on

the design patent because of a failure to satisfy the ordinary observer test. See Minka Lighting,

2002 WL 1331883, at *5-6. In Minka Lighting, the plaintiff was the holder of a design patent for

the ornamental design of a combined ceiling fan and light fixture. See id. at *1. In that case, the

court found as a matter of law that the patented design and the alleged infringing products were

not substantially similar. See id. at *4. The court reviewed the bracket arms and blades of the

patent, as well as those of the allegedly infringing products, and found that the allegedly

infringing products' bracket arms did not create the same visual impression as did the design

patent. See id.

Both of these cases illustrate the narrowness of design patents. For example, in

Minka Lighting, the court found that the allegedly infringing products did not create the same

curved impression as the patent's fan blades. 2002 WL 1331883, at *4. Similarly, in Tropicana

Products, the court found that since the top portion of the bottle resembled a sphere as opposed to

a flaring bell and because the bottom portion was a straight cylinder as opposed to another flaring

bell in Land O'Lakes' patent, they were not substantially similar. 286 F. Supp.2d at 345. The

analysis in both of these cases illustrates the narrow scope of design patents, particularly with

reference to the ordinary observer test.

12

### 2. Comparison of the 621 Patent with Master Lock's Products

I will now analyze whether Master Lock's products are substantially similar to the 621 patent so as to confuse the ordinary observer. I find that the differences between Master Lock's products and the 621 patent indicate that the designs at issue do not qualify as being substantially similar. Under the ordinary observer test, one need not look beyond the drawings of the 621 patent and the designs of Master Lock's products. <u>See</u> <u>Tropicana Prods.</u>, 286 F. Supp.2d at 345 (citing <u>Braun</u>, 975 F.2d 820).

Initially, I note the differences in the shaft. While the shaft itself might not be observable at the point of sale based on Master Lock's packaging, the Federal Circuit has stated that "the 'ordinary observer' analysis is not limited to those features visable at the point of sale, but instead must encompass all ornamental features visible at any time during the normal use of the product." <u>Contessa Food Prods.</u>, 282 F.3d at 1381. Since the shaft would be visible during normal use, I find it appropriate to consider it in our ordinary observer analysis. First, the shaft section on Master Lock's products is not cylindrical as compared to the 621 patent. Indeed, the shaft on Master Lock's products has a flat side whereas the 621 patent depicts a cylindrical shaft. Second, whereas the trapezoidal notches in the 621 patent completely encircle the shaft, the notches on Master Lock's products do not encircle the shaft since the flat side has no notches. Third, I find that the notches on the 621 patent and Master Lock's products are not substantially similar.[5] Thus, the shaft section on Master Lock's products do not create the same visual

---

[5] Master Lock notes that the notches on all of its products are substantially the same except for model number 238. While the notches on the 238 model more closely resemble the trapezoidal notches on the 621 patent, the remaining differences between the 238 model and the 621 patent are enough to not make the 238 model and the 621 patent substantially similar. Additionally, I note that as with the other Master Lock products, the notches on model 238 do not

impression as does the 621 patent.

Next, I will examine the hooks.  While the 621 patent has a U-shaped connective segment between the hooks, such a connective segment is absent on Master Lock's products. Indeed, the two hooks on Master Lock's products have no connective segment.  Additionally, while the hooks on the 621 patent resemble a C-shape, the hooks on Master Lock's products are much more rigid and not as smooth or flowing as depicted in the 621 patent.[6]  Thus, the design of the hooks on Master Lock's products does not create the same impression as does the 621 patent whose hooks connect via a U-shaped connective segment and whose hooks resemble a C-shape.

Finally, I will examine the intersection between the hooks and the shaft.  The 621 patent depicts a circle on top of a relatively straight portion as shown in Figures 2 and 3 of the 621 patent.  The appearance of the intersection on Master Lock's products is quite different. Since Master Lock's hooks do not have a connective segment, the intersection looks like a circle on top of two other circles when viewed from a front side elevational view.  Additionally, when viewed from a top or bottom view, the intersection on Master Lock's products looks as if the hooks sprout from the shaft itself whereas, because of the connective U-shaped connective segment in the 621 patent, the hooks on the 621 patent appear to sprout from either side of the connective segment rather than the shaft itself.  Thus, the intersection on Master Lock's products does not create the same visual impression as does the 621 patent.

These substantial differences lead to the ultimate conclusion that Master Lock's

completely encircle the shaft as they do on the 621 patent.

[6] Even if the ordinary observer would not necessarily note this difference in the shape of the hooks, the other differences between Master Lock's products and the 621 patent are enough to find as a matter of law that they are not substantially similar.

14

products do not create the same visual impression as the '621 patent. Thus, the ordinary

observer, when viewing Master Lock's products as a whole, would not conclude that they are

substantially similar to the patent. The shaft, hooks and the intersection in Master Lock's

products are different so as to not make Master Lock's products substantially similar to the 621

patent.

### 3. Lawman's Expert Report

Lawman submitted an expert report to support its argument that Master Lock's

products are substantially similar to the 621 patent. Lawman argues that because its expert

concluded that Master Lock's products were substantially similar to the 621 patent, a material

issue of fact exists related to the ordinary observer test. Initially, we note that nothing more is

required under the ordinary observer analysis than conducting a visual comparison of the

patented design and the allegedly infringing products. See Braun, 975 F.2d at 821. We have

already compared the patent to Master Lock's products and found that they are not substantially

similar. No further analysis is necessary, however, we will briefly touch upon Lawman's expert

report.

Lawman's expert report, which states that Master Lock's products are

substantially similar to the 621 patent, does not create a material issue of fact. As one court has

noted, "expert testimony is unnecessary under the ordinary observer prong of the infringement

test." Bush Indus., 772 F. Supp. at 1450. Also, Lawman's expert admitted in his deposition that

his analysis focused not only on the ornamental aspects of the 621 patent, but also on its

15

functional aspects of the 621 patent.[7]  However, the Federal Circuit has made clear that "it is the

non-functional, design aspects that are pertinent to determinations of infringement."  Lee, 838

F.2d at 1188.  Finally, Lawman's expert does not affect this Court's analysis because I have

decided after a visual comparison that Master Lock's products are not substantially similar to the

621 patent.

## C.  POINT OF NOVELTY TEST

As stated previously, both the ordinary observer and point of novelty tests must be

satisfied in order to find infringement.  See Contessa Food Prods., 282 F.3d at 1377.  Sometimes,

courts elect to forego the point of novelty test upon concluding as a matter of law that the

accused devices are not substantially similar under the ordinary observer test.  See Kellerman v.

Coca-Cola Co., 280 F. Supp.2d 670, 679 (E.D. Mich. 2003)(stating it will not address point of

novelty test because plaintiffs have not satisfied ordinary observer test); Minka Lighting, 2002

---

[7] Specifically, Lawman's expert stated the following in his deposition:

> Q:  Would you agree that only non-functional design aspects
>      are pertinent to design patent infringement?
> A:  No, I wouldn't agree with that.
> Q:  Why not?
> A:  Because in a design patent, it is the overall visual aesthetic
>      appearance of the thing.  And in design patents these are
>      functional objects, so almost all of it has some function.
> Q:  So you would not screen out functional and non-functional,
>      you would look at the overall?
> A:  Yes.
> Q:  Is that what you did here?
> A:  Yes.

(Skalski dep. at 87).

WL 1331883, at *6 (stating it will not address point of novelty test since no reasonable jury could

find substantial similarity); Child Craft Indus., Inc. v. Simmons Juvenile Prods. Co., Inc., 990 F.

Supp. 638, 644 (S.D. Ind. 1998). In the interest of completeness, I have chosen to examine the

point of novelty test because I also find that Lawman has not satisfied this test.

### 1. Lawman's Purported Nine Points of Novelty

The point of novelty test "requires proof that the accused design appropriates the

novelty which distinguishes the patented design from the prior art." Contessa Food Prods., 282

F.3d at 1377 (citing Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423, 1444 (Fed. Cir. 1984)).

Lawman argues, through its expert, that the 621 patent has nine points of novelty. Specifically,

Lawman argues the 621 patent's points of novelty are:

1) the double hooks;
2) the symmetrical relationship of the hooks to themselves;
3) the symmetrical relationship of the hooks to the shaft;
4) the attachment of the hooks close to the end of the shaft;
5) the facing of the openings of the hooks outward in relation to the end of the shaft;
6) the attachment areas that are on the outside surfaces of both the hooks and the shaft (as opposed to on the ends of the shaft or hooks with either cutting into the others);
7) the increased diameter of the shaft where the hooks are attached;
8) the diameter of the hooks that is similar to the increased diameter of the shaft at the hook end; and
9) the proportional relationship between the size of the hooks and the length of the shaft.

(Pl.'s Opp'n to Def.'s Mot. for Summ. J. of Non-Infringement, 20). Lawman argues that Master

Lock has incorporated these points of novelty into its products.

In response to Lawman's purported points of novelty, Master Lock responds by

citing to U.S. Utility Patent Number 5,197,308 (the "308 patent"). The 308 patent was issued

17

over a year before an application was made to the Patent Office for the 621 patent. Therefore, the 308 patent can properly be considered as prior art. See 35 U.S.C. 102(b).[8] Master Lock argues that the 308 patent contains all of the features that Lawman alleges are novel within the 621 patent.

Lawman attempts to negate the impact of the 308 patent by arguing that it has no relevance to the point of novelty test because it depicts a three-prong wheel lock device. However, throughout the 308 patent, the description consistently refers to the device as a "double-fork" which negates Lawman's three-prong argument. Thus, the 308 patent is very relevant as prior art and illustrates that the double hook in the 621 patent is not a point of novelty. Additionally, we find that Lawman's other purported points of novelty are also contained within the 308 patent (as detailed in Master Lock's Reply Brief) and, therefore, shall not be considered points of novelty. Indeed, Master Lock set forth a picture and diagram of the 308 patent which clearly illustrated how all nine points are within the prior art of the 308 patent.

### 2. Additional Purported Points of Novelty

To the extent that there might be points of novelty beyond the purported nine listed by Lawman's expert, we find that Master Lock does not appropriate them into the design

---

[8] This section states:

A person shall be entitled to a patent unless -

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than a year prior to the date of the application for patent in the United States.

35 U.S.C. 102(b).

of its products.[9]  For example, during discovery, Lawman argued that other points of novelty were present in the 621 patent.  The following is a list that Lawman admitted were points of novelty during discovery:

1)    the shape of the hook;
2)    the visual appearance of a circular tube atop the midpoint of a single piece hook; and
3)    the configuration shown in Figure 3 of the 621 patent.

(Def.'s Br. in Supp. of its Mot. for Summ. J. of Non-Infringement, Ex. E).  Even if we were to find that these three are points of novelty depicted in the 621 patent, it is clear is that they are not appropriated in Master Lock's products.

First, and perhaps most importantly, Master Lock's products do not appropriate the purportedly novel shape of the hooks depicted in the 621 patent.  This is best illustrated by the fact that Master Lock obtained its own design patent for the shape of its wheel lock hooks (the 861 patent).  Patents maintain a presumption of validity and Lawman has not come forward with any evidence or argument as to why we should declare the 861 patent invalid.  See Dana Corp. v. Am. Axle & Mfg., Inc., 279 F.3d 1372, 1375 (Fed. Cir. 2002)(citing 25 U.S.C. § 282)(stating patent is presumed to be valid).  Upon reviewing the 621 patent, the Patent Office deemed that the shape of Master Lock's hooks was patentably distinct from the prior art, most notably the shape of the hooks in the 621 patent.  We find that Master Lock's hooks do not appropriate the purportedly novel shape of the hooks as depicted in the 621 patent.

Second, we find that Master Lock's products do not appropriate Figure 3 of the 621 patent nor do we find that its products appropriate a circular tube on top of the midpoint of a

_____

[9] It is important to note that Lawman does not assert that the following list are points of novelty within its Brief.  However, in order to perform a complete analysis, we will briefly examine them as if they are points of novelty.

19

single piece hook. Specifically, because Master Lock's products do not have a connective U-shaped connective segment between its hooks, we find that its products do not appropriate these purported points of novelty.

For all of these reasons, Master Lock's products do not satisfy the point of novelty test necessary for a finding infringement. Lawman's nine points of novelty are not novel since they are all contained within prior art. In addition, the three purportedly points of novelty admitted by Lawman during discovery are not appropriated in Master Lock's products.

## V. **CONCLUSION**

In conclusion, Master Lock's products do not infringe on the 621 patent. First, the 621 patent was construed. Next, I found that the properly construed claim was not substantially similar to Master Lock's products under the ordinary observer test. Finally, Lawman's purported points of novelty were either not novel or were not appropriated by Master Lock's products. As such, summary judgment is appropriate in this case, and we grant Master Lock's Motion for Summary Judgement of Non-Infringement.

An appropriate Order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| LAWMAN ARMOR CORPORATION, | : | CIVIL ACTION |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | No. 02-6605 |
|  | : |  |
| MASTER LOCK COMPANY, | : |  |
|  | : |  |
| Defendant. | : |  |

## ORDER

**AND NOW**, this 11th day of March, 2004, upon consideration of Defendant's

Motion for Summary Judgment of Non-Infringement (Doc. No. 14), together with the Response,

Reply, Memoranda and Exhibits attached thereto, it is hereby **ORDERED** that said Motion is

**GRANTED.**

BY THE COURT:

Robert F. Kelly,                          Sr. J.

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAWMAN ARMOR CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civ. Action No. 02-6605 |
| v. | ) | |
| | ) | Hon. Robert F. Kelly |
| MASTER LOCK COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

FILED   MAR 1 6 2004

## NOTICE OF APPEAL

Notice is given that Plaintiff, Lawman Armor Corp., in the above named case hereby

appeals to the United States Court of Appeals for the Federal Circuit from the Order granting

Defendant Master Lock Company's Motion for Summary Judgment of Non-Infringement

entered in this action on March 11, 2004.

Respectfully submitted,

Roberta Jacobs-Meadway
Lynn E. Rzonca
Corey Field
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500
Attorneys for Plaintiff

Date: March 16, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2004 a copy of the foregoing Notice of Appeal was served on counsel as listed below:

**VIA HAND DELIVERY**
David J. Wolfsohn, Esquire
Shanon Levin Lehman, Esquire
Hangley Aronchick Segal & Pudlin
One Logan Square, 27th Floor
Philadelphia, PA 19103

**VIA FAX and U.S. FIRST CLASS MAIL**
Jonathan H. Margolies, Esquire
Katherine W. Schill, Esquire
Michael Best & Friedrich LLP
100 E. Wisconsin Ave., Ste. 3300 .
Milwaukee, WI 53202

FILED MAR 1 6 2004

Corey Field

## CERTIFICATE OF SERVICE

I, Corey Field, an attorney, certify that a true and correct copy of the foregoing Plaintiff's Motion to Stay Proceedings and Accompanying Memorandum and Exhibits was served on the following individuals on the date listed below:

### VIA HAND DELIVERY

Christopher A. Rothe
Dann Dorfman Herrell and Skillman, P.C.
Suite 720, 1601 Market Street
Philadelphia, PA 19103

### VIA FACSIMILE

Philip J. Moy Jr.
Robert V. Vickers
Jude A. Fry
Fay, Sharpe, Fagan, Minnich, &McKenn, LLP
1100 Superior Avenue, Seventh Floor
Cleveland, OH 44114

Corey Field

Dated: March 22, 2004