IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAWMAN ARMOR CORPORATION, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:02-CV-04595-RK |
| | : | |
| v. | : | Judge Robert Kelly |
| | : | |
| WINNER INTERNATIONAL, LLC, and WINNER HOLDING LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANTS' SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

Defendants, Winner International, Inc. (f/k/a/ Winner International, LLC) and Winner Holding LLC (collectively "Winner"), submit this supplemental reply memorandum in support of their motion for summary judgment of non-infringement and in response to the supplemental oppositions filed by plaintiff, Lawman Armor Corporation ("Lawman").[1]

### I. INTRODUCTION

In September 2003, Winner filed its motion for summary judgment that the products accused of infringing Lawman's U.S. Patent No. Des. 357,621 ("the '621 design patent") did not infringe as a matter of law. In its memorandum supporting the motion[2], Winner explained how the patented design should be construed to take into account its functional aspects[3] and presented

---

[1] On December 23, 2004, Lawman filed its initial supplemental memorandum, Lawman Armor Corp.'s Supplemental Brief in Opposition to Defendants' Motion for Summary Judgment of Non-Infringement (Docket No. 61) [hereinafter Lawman's Supplemental Opposition]. Then, on January 4, 2005, Lawman filed a second supplemental pleading, Lawman Armor Corp.'s Second Supplemental Submission in Opposition to Defendants' Motion for Summary Judgment of Non-Infringement (Docket No. 62) [hereinafter Lawman's Second Supplemental Opposition]. This reply is responsive to both of these supplemental oppositions.

[2] Defendant's Memorandum in Support of Motion for Summary Judgment of Non-Infringement (Docket No. 34) [hereinafter Winner's Supporting Memorandum].

[3] *Id.* at 4-8.

an analysis under both the substantial similarity and points of novelty tests to show that the accused Winner products did not infringe the '621 design patent as a matter of law.[4]

Lawman's opposition was filed in October 2003.[5] Lawman contended that Winner's summary judgment motion was premature because discovery was still open.[6] Lawman also presented arguments under both tests of design patent infringement, asserting that the accused Winner products were substantially similar to and incorporated the points of novelty of the '621 design patent.[7] Lawman further argued that Winner's proposed construction of the patented design was flawed because it sought to eliminate the functional aspects of the design from consideration.[8]

Winner filed a reply arguing that its motion for summary judgment was ripe because the Court had all the facts necessary to decide the issue as a matter of law and that Lawman had presented neither any material issues of factual dispute nor any persuasive legal arguments compelling the Court to deny Winner's motion.[9]

Before it issued any decision on Winner's motion, the Court issued an order granting a motion for summary judgment of non-infringement concerning the same '621 design patent in *Lawman Armor Corporation v. Master Lock Company,* Civil Action No. 02-6605, 2004 WL 440177 (E.D. Pa., March 11, 2004). In its *Master Lock* decision, the Court presented a

---

[4] *Id.* at 10-16. Winner also submitted photographs of a product modified to present an appearance corresponding to that shown in Figure 2 of the '621 design patent to demonstrate how different the accused product's shape was from the patented design. *Id.* at 16-19.

[5] Lawman Armor Corp.'s Opposition to Winner International LLC's Motion for Summary Judgment of Non-Infringement (Docket No. 36) [hereinafter Lawman's Initial Opposition].

[6] *Id.* at 3-4.

[7] *Id.* at 5-12.

[8] *Id.* at 12-13.

[9] Defendant's Reply Memorandum in Support of Motion for Summary Judgment of Non-Infringement (Docket No. 40) [hereinafter Winner's Initial Reply].

construction of the claimed design of the '621 design patent. *Master Lock,* 2004 WL 440177 at *4-*5, slip op. at 8-9.

Lawman appealed the Court's *Master Lock* claim construction and summary judgment decision to the U.S. Court of Appeals for the Federal Circuit, and the present action was stayed pending that appeal. The Federal Circuit affirmed the Court's *Master Lock* decision without opinion, and the stay of this action was lifted.

Following the lifting of the stay, Lawman filed its Supplemental Opposition and Second Supplemental Opposition. Lawman's Supplemental Opposition raises no new arguments. Rather, it presents a fatally flawed analysis of the issue of design patent infringement. A critical reading of Lawman's arguments on both the substantial similarity test and the points of novelty test compels the conclusion that the accused Winner products do not infringe the '621 design patent and that Winner's motion for summary judgment of non-infringement must be granted.

## II.  WINNER'S PRESENTATION OF THE SUBSTANTIAL SIMILARITY TEST IS CORRECT

Lawman's Supplemental Opposition opens with the argument that Winner has proposed an application of the substantial similarity test that is too broad. In essence, Lawman asserts that two prior cases, *Gorham Co. v. White,* 81 U.S. 511 (1871), and *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117 (Fed. Cir. 1993), teach that a court analyzing design patent infringement cannot discount features that might be similar because they are functional. This assertion is contrary to established case law and completely at odds with the analysis employed by this Court in the *Master Lock* case.

Lawman ignores the limited applicability of *Gorham* and *L.A. Gear,* as those cases dealt with purely ornamental features that adorned useful articles. The Federal Circuit's comments on *Gorham*  are instructive:

> In *Gorham,* the claimed elements were purely ornamental, being limited to the scroll work on the handle portion of flatware. If, on the other hand, a design contains both functional and ornamental features, the patentee must show that the perceived similarity is based on the ornamental features of the design. The patentee "must establish that an ordinary person would be deceived by reason of the common features in the claimed and accused designs which are ornamental."

*OddzOn Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1405 (Fed. Cir. 1997).

The present case involves a useful article, and Federal Circuit case law **requires** that the claimed design be construed to eliminate the functional features. "Where a design contains both functional and non-functional elements, the scope of the claims must be construed in order to identify the non-functional aspects of the design as shown in the patent." *Id.* This Court followed established case law in its construction in the *Master Lock* case, where it recognized the narrow scope of a design patent and established a claim construction that focused on the overall visual impression created by the design shown in the patent's drawings, rather than making reference to the broader design concept of a sliding hook portion of a steering wheel lock. *See Master Lock,* 2004 WL 440177 at *2-*5, slip op. at 5-10.

Lawman also argued without any apparent legal basis that the substantial similarity test was appropriate only for a jury.[10] The issue on summary judgment is whether there are any material *facts* in dispute, not whether the parties disagree on the ultimate conclusion of infringement. In this case, there are no disputed facts—the accused Winner products, which are in the possession of the Court, are what they are and appear as they appear. The Court has the obligation to construe the claimed design as a matter of law. Following that exercise, the Court can decide, as a matter of law, whether the accused products are substantially similar to the

---

[10] Lawman's Supplemental Opposition at 5.

construed design. Submitting this issue to a jury would be inappropriate under these circumstances, as there are no material facts in dispute for the jury to consider.[11]

### III. UNDER THE COURT'S CLAIM CONSTRUCTION IN *MASTER LOCK,* THERE CAN BE NO INFRINGEMENT UNDER THE SUBSTANTIAL SIMILARITY TEST

#### A. Binding Effect of *Master Lock* Construction on Lawman

Under the principles of issue preclusion, Lawman is barred from seeking modification of the Court's claim construction in the *Master Lock* case. Because (a) the claim construction issue in this action is identical to that in *Master Lock;* (b) the claim construction issue was actually litigated in *Master Lock;* (c) resolution of the claim construction issue was essential to the final judgment in *Master Lock;* and (d) Lawman had a full and fair opportunity to litigate claim construction in *Master Lock,* Lawman cannot re-litigate this Court's construction of the '621 design patent in *Master Lock. In re Freeman,* 30 F.3d 1459, 1465 (Fed. Cir. 1994).

#### B. Requested Clarification of *Master Lock* Construction

Winner should not be similarly bound, as it was not a party to the *Master Lock* case and, thus, did not have an opportunity to litigate the claim construction issue in that case. Winner, however, has no real quarrel with the Court's *Master Lock* construction. Indeed, Winner believes that the *Master Lock* construction follows its own description of the non-functional aspects of the patented design quite closely.

---

[11] Lawman also stated that Winner had conceded that the issue of whether the hook ends of the accused devices are parallel or not was unsuitable for summary judgment. *Id.* at 4. Winner does not recall making any such concession, and is unsure what Lawman means by "distinct divergence and non-parallel alignment in several respects." *Id.* Clearly, the principles of perspective can be manipulated to make parallel elements appear non-parallel in photographs. In this case, however, the Court has the actual products on hand and can evaluate whether the hook ends of the Winner accused products appear to the eye to be substantially parallel or distinctly diverging.

Nonetheless, there is one aspect of the Court's *Master Lock* construction that Winner believes could be clarified. That aspect relates to the Court's construction of features displayed in Figures 4 and 5 of the '621 design patent.

Regarding Figures 4 and 5, the Court's *Master Lock* construction states: "The hooks have the same profile as shown in Figures 4 and 5 which resemble a C-shape." *Master Lock,* 2004 WL 440177 at *4, slip op. at 9. Winner finds ambiguity in this aspect of the construction, as "the same profile" can be read as meaning either (a) the two hooks have the same profile as each other; or (b) each of the two hooks has the same profile as seen in Figures 4 and 5.

If the former alternative meaning is controlling, the only limiting description of the shape of the hooks from the side view is that the profile of the hooks "resembles a C-shape." In such a case, Winner submits that the construction would fail to "limit[] the scope of the patent to its overall ornamental visual impression rather than to the broader general design concept," as required by *OddzOn Products,* 122 F.3d at 1405 and as advocated by the Court in its *Master Lock* opinion. Winner is concerned that, if the reference to "C-shape" is the only operative descriptor for the side-view profile of the hooks, then the Court's construction can be read to encompass any number of shapes that are open on one side and closed on the other, thereby departing from the visual impression actually created by what is shown in Figures 4 and 5.

Winner notes that, in comparing the *Master Lock* construction to the shapes of the accused Master Lock products, the Court stated: "Additionally, while the hooks on the 621 patent resemble a C-shape, the hooks on Master Lock's products are much more rigid and not as smooth or flowing as depicted in the 621 patent." *Master Lock,* 2004 WL 440177 at *7, slip op. at 14. Winner views this statement as indicating that the Court viewed the reference to "the same profile" in its construction as having the second alternative meaning set forth above: that

each of the two hooks in the construed design has the same profile as seen in Figures 4 and 5 of the '621 design patent.

Winner's initial supporting memorandum described the shape of the C-shaped hooks in these two drawings as "starting as a curve of constant radius adjacent the elongated rod and then terminating with a linear segment that extends beyond the end of the rod."[12] Master Lock's description stated: "Each of the two curved hook segments, as shown in Figures 4 and 5, consist [sic] of a smooth semicircle that resembles an upside-down U when viewed from the right or left."[13] Winner requests that the Court clarify how its construction applies to Figures 4 and 5 of the '621 patent. If, as Winner believes, the Court intended to incorporate into its construction the smooth, constant-radius curvature of the hooks segments as viewed in Figures 4 and 5, Winner requests that the Court amend its construction to state so specifically.

> C. **Applying the *Master Lock* Construction to the Accused Winner Products Compels the Conclusion that There Is No Infringement Under the Substantial Similarity Test**

As to Lawman's attempt to analyze substantial similarity based on the Court's *Master Lock* construction, the analysis is clearly wanting. Lawman breaks up the construction into ten numbered elements.[14] It then provides a wordless "analysis" consisting of reference numerals pointing to portions of the Winner product depicted in photographs, without any indication of whether what is described in each construction element actually appears in the photograph.[15]

Lawman's silence is understandable, because the photographs in Lawman's Supplemental Opposition depict that:

---

[12] Winner Supporting Memorandum at 8.

[13] Defendant's Brief in Support of Its Motion for Summary Judgment of Non-Infringement at 8, *Lawman Armor Corporation v. Master Lock Company,* Civil Action No. 02-6605, (E.D. Pa., Aug. 6, 2003) (Docket No. 14).

[14] Lawman's Supplemental Opposition at 6-7.

[15] *Id.* at 8-9.

(a) With respect to construction element 3, the relative placement and linear dimensions of the notches for the depicted Winner product are such that they appear further away from the hooks than is "as shown" in the '621 design patent's drawings, resulting in a relatively shorter smooth shaft section at the end furthest from the hooks.

(b) With respect to construction element 8, the hooks when viewed from the side do not have the profile "as shown in Figures 4 and 5." The hooks in the accused Winner product appear as two substantially straight portions connected by a sharply curved or bent portion that lacks the smooth, flowing appearance of the constant-radius or semi-circular hooks shown in Figures 4 and 5. Moreover, contrary to this element of the construction, which states that "[t]he ends of the hooks are not parallel to each other," the ends of the hooks of the Winner product *are* parallel to each other when seen from the same view presented by Figures 6 and 7 of the '621 patent.[16]

(c) With respect to element 9, when viewed from the perspective analogous to Figure 6 of the '621 patent, the ***overall appearance*** of the hooks of the accused Winner product is still that of a U, not an M. In the photograph used by Lawman in its brief, the hooks are barely visible. This is in stark contrast with the actual

---

[16] Lawman's wordless analysis attempts to finesse this gaping hole in its case by applying reference numeral 8 to the photograph corresponding to Figure 2 of the patent (the end view along the axis of the rod on page 8 of Lawman's Supplemental Memorandum). The photographs corresponding to Figures 6 and 7 of the '621 patent (on page 9 of Lawman's Supplemental Memorandum) do not include any reference numeral 8. Of course, those photographs show that the hook ends of the accused Winner product are parallel to each other.

depiction of Figure 6, where the hooks extend well beyond the curve of the overlay segment to present a clear M-shaped appearance.

(d) With respect to element 10, the intersection of the hooks and the shaft is *not* centered on a relatively straight portion of the connective segment when viewed from the rod end as in Figures 2 and 3. Rather, the overlay segment connecting the hook portions in each of the accused Winner products is distinctly curved when viewed along the rod axis. Moreover, the shaft in the accused Winner product does *not* extend past the connective segment when viewed from a perspective corresponding to Figure 6 or 7.

These differences between the construed design and the accused Winner products are substantial and indisputable. Accordingly, the Court must grant Winner's motion for summary judgment of non-infringement even if it considers only the substantial similarity test for infringement and applies the *Master Lock* construction.

### IV. THE ACCUSED WINNER PRODUCTS DO NOT INCLUDE ANY POINTS OF NOVELTY OF THE '621 DESIGN PATENT

Having pondered the points-of-novelty issue during the fifteen months that elapsed between Winner's initial motion for summary judgment and Lawman's Supplemental Opposition, Lawman has maintained its original position on the points of novelty in the design set forth in the '621 design patent.[17] Still missing from the list is the visual element of distinctly diverging hook ends, an aspect clearly lacking in the accused Winner products.

Unfortunately for Lawman, each of its eight alleged points of novelty is clearly shown in the prior art submitted to the Court by Winner and discussed in Lawman's own brief.

---

[17] *Compare* Lawman's Supplemental Opposition at 15-16 *with* Lawman's Initial Opposition at 11-12.

1. "A sliding arm of a steering wheel locking device that includes a shaft with 2 hooks attached at approximately one end of the shaft" is shown in Chen '438 (U.S. Patent No. 5,299,438, Moy Decl. Ex. G)[18] and in Pazik '308 (U.S. Patent No. 5,197,308, Moy Decl. Ex. F).

2. "The hooks are curved, have the same profile, are symmetrical to one another, and are generally shaped like the letter 'C'" is a feature shown in Chen '438 (Moy Decl. Ex. G) and in U.S. Patent No. 5,024,069 (Moy Decl. Ex. I).

3. "The open ends of the hooks face outward from the shaft" is a feature shown in Chen '692 (U.S. Patent No. 5,107,692, Moy Decl. Ex. A) for a single hook, in U.S. Patent No. 5,042,278 (Moy Decl. Ex. C) for a single hook, and in Pazik '308 (Moy Decl. Ex. F).

4. "The shaft attaches to the hooks at or about the top portions of the hooks, approximately midway between the hooks" is a feature shown in Pazik '308 (Moy Decl. Ex. F) and in Chen '438 (Moy Decl. Ex. G).

5. "The shaft includes a pattern of ridges" is a feature shown in Chen '692 (Moy Decl. Ex. A), in U.S. Patent No. 5,031,428 (Moy Decl. Ex. B), in U.S. Patent No. 5,042,278 (Moy Decl. Ex. C), in Pazik '308 (Moy Decl. Ex. F), in Chen '438 (Moy Decl. Ex. G), and in U.S. Patent No. 5,052,201 (Moy Decl. Ex. J).

6. "The shaft increases in diameter at the end of the shaft attached to the hooks, with the diameter increasing at a point just prior to the point of attachment of the hooks to the shaft" is a feature resulting from coating the hook end with plastic and is

---

[18] References to Moy Decl. are citation to the exhibits attached to the Declaration of Philip J. Moy Jr. submitted with Winner's Supporting Memorandum.

shown in U.S. Patent No. 5,042,278 (Moy Decl. Ex. C) for a single hook, in Pazik '308 (Moy Decl. Ex. F), and in U.S. Patent No. 5,052,201 (Moy Decl. Ex. J).

7. "The shaft is generally circular at the point where it attaches to the hooks" is a feature shown in Chen '692 (Moy Decl. Ex. A) for a single hook, in U.S. Patent No. 5,042,278 (Moy Decl. Ex. C) for a single hook, in Pazik '308 (Moy Decl. Ex. F), in Chen '438 (Moy Decl. Ex. G), and in U.S. Patent No. 5,052,201 (Moy Decl. Ex. J).

8. "The hooks are approximately 20-25% of the length of the shaft" is a feature that appears to be shown in Chen '692 (Moy Decl. Ex. A) for a single hook, and in U.S. Patent No. 5,042,278 (Moy Decl. Ex. C) for a single hook if Lawman is measuring hook length along the axis of the rod.

With all of its asserted points of novelty disclosed in the prior art, Lawman's fall-back argument is that the cited prior art is not relevant. This argument is specious. Each of these prior art patents discloses a steering wheel lock with hook-shaped members for engaging a steering wheel rim. There can be no more relevant prior art that what has been cited by Winner.

With respect to Pazik '308 (Moy Decl. Ex. F), Lawman is attempting to convince the Court to disregard a clearly pertinent prior art reference on the basis of semantics. Whether they are called prongs, or forks, or hooks, the rim-engaging elements shown in Figures 1 and 2 of Pazik '308 give the appearance of the sliding portion of a steering wheel lock having a pair of elements fairly termed hooks that depend from a rod, the rod extending longitudinally beyond the point where the hooks are attached.

Winner is not arguing that the design shown in the '621 patent is not patentable in view of this prior art. Rather, Winner argues that the primary feature distinguishing the patented

- 11 -

design from the prior art—a steering wheel engaging member having two distinctly diverging hook ends—does not appear in the accused Winner products. Lawman has chosen to ignore this clear point of novelty from its analysis because it is fatal to its infringement claim.

### V. WINNER'S NEW STEERING WHEEL LOCK

Lawman's Second Supplemental Opposition follows up on its semantic arguments against Pazik '308 by advising the Court that Winner recently has introduced a new steering wheel lock having three hooks. Winner is at a complete loss as to how this development has any bearing on its motion for summary judgment except to highlight the fallacies in Lawman's own arguments. Winner notes that Lawman describes the new Winner product as "strikingly similar in appearance to the '308 Patent"[19] and then speaks of the Winner product as having three hooks. This should confirm that Pazik '308 discloses a device with hooks.

### VI. CONCLUSION

For the reasons set forth in its initial supporting memorandum, as supplemented by its reply memorandum and this supplemental reply, Winner submits that its products do not infringe

---

[19] Lawman's Second Supplemental Opposition at 1. For the Court's information, one difference between Winner's new product and the device shown in Figures 1 and 2 of Pazik '308 is that the end of the rod is bent toward the ends of the two hooks that depend from the rod in Winner's product, thereby forming an additional hook.

the '621 design patent as a matter of law, so that it is entitled to summary judgment of non-infringement.

                                          Respectfully submitted,

Date: January 11, 2005                  /s/ Christopher A. Rothe
                                          Philip J. Moy Jr
                                          pmoy@faysharpe.com
                                          Robert V. Vickers
                                          Jude A. Fry
                                          Fay, Sharpe, Fagan, Minnich & McKee, LLP
                                          1100 Superior Avenue, Seventh Floor
                                          Cleveland, Ohio  44114-2579
                                          Telephone: 216-861-5582
                                          Facsimile: 216-241-1666

                                          Christopher A. Rothe
                                          crothe@ddhs.com
                                          Attorney I.D. No. 84,023
                                          Dann Dorfman Herrell and Skillman, P.C.
                                          1601 Market Street, Suite 2400
                                          Philadelphia, PA  19103-2307
                                          Telephone: 215-563-4100
                                          Facsimile: 215-563-4044

                                          Attorneys for Defendants

## CERTIFICATE OF SERVICE

    I hereby certify that on January 11, 2005, a copy of the foregoing **DEFENDANTS' SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT** was served by messenger on the following attorney for plaintiff:

>Roberta Jacobs-Meadway, Esq.
>Ballard, Spahr Andrews & Ingersoll, LLP
>1735 Market Street, 51st Floor
>Philadelphia, PA  19103.


                                                                   /s/ Christopher A. Rothe